UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KEVIN MICHAEL THORNTON,
    Petitioner,

Case No. 1:14-cv-561

    vs.

Barrett, J.
Litkovitz, M.J.

WARDEN, MADISON
CORRECTIONAL INSTITUTION,
    Respondent.

**REPORT AND
RECOMMENDATION**

    Petitioner, an inmate at the Madison Correctional Institution, has filed a petition and an

amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 with the assistance of

counsel. (Docs. 1, 25). Petitioner challenges his 2008 aggravated robbery and kidnapping

convictions in the Clermont County, Ohio Court of Common Pleas. This matter is now before

the Court on respondent's motion to transfer the petition to the United States Court of Appeals

for the Sixth Circuit because it is a successive petition within the meaning of 28 U.S.C. §

2244(b), which this Court lacks jurisdiction to consider without prior circuit court authorization.

(Doc. 29).

## I. FACTUAL BACKGROUND

    The Ohio Court of Appeals set forth the following set of facts leading to petitioner's

conviction and sentence:[1]

    {¶ 2} On September 11, 2007, at approximately 1:15 p.m., a man wearing
    sunglasses and a hat entered the Cash Express on Main Street in the city of

---

[1] 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." Because petitioner has neither cited nor presented clear and convincing evidence to rebut the Ohio Court of Appeals' factual findings quoted herein, the state appellate court's factual findings are presumed to be correct. *See McAdoo v. Elo,* 365 F.3d 487, 493-94 (6th Cir. 2004).

Milford, Clermont County, Ohio.  The man walked up to the counter and asked
store employee Leslie Fahey what he needed to do to obtain a loan.  When Fahey
walked around the counter to give him a brochure, the man pointed a handgun at
her stomach and demanded money.  When Fahey asked if he was serious, the man
racked the slide on his handgun, thereby chambering a round in the weapon, and
repeated his demand.  Fahey handed over the contents of her cash drawer.  The
man then ordered Fahey to lie down on the floor, bound her hands and feet with
zip ties, and told her not to scream or he would come back.  After hearing nothing
but silence, Fahey freed her hands, cut the zip tie on her feet and sent out an alarm
using her computer.

{¶ 3} Even though the surveillance photographs of the robbery taken by the
store's security camera did not show the robber's face, several Milford police
officers believed that, given the perpetrator's height and posture, the robber was
Thornton.  When the police showed Fahey a photo lineup that did not include
Thornton, but contained the photo of a known shoplifter, she did not identify any
of the men in the lineup as being the robber.  However, when the police showed
Fahey a second photo lineup that contained Thornton's photograph, she identified
Thornton as the man who robbed her.

(Doc. 5, Ex. 1 at PageID 68).

## II. PROCEDURAL HISTORY

On September 21, 2007, the Clermont County, Ohio grand jury returned a two-count

indictment charging petitioner with aggravated robbery and kidnapping.  (Doc. 5, Ex. 3).  On

December 7, 2007, petitioner's first trial ended in a hung jury.  (Doc. 5, Ex. 5).  After a second

jury trial ending on April 10, 2008, petitioner was found guilty of all charges in the indictment.

(Doc. 5, Ex. 6).  Prior to sentencing, petitioner filed a motion for a new trial, based on newly

discovered evidence,[2] which was denied by the trial court.  (Doc. 5, Ex. 9, 10).  On September

30, 2008, petitioner was sentenced to a total aggregate sentence of twelve years of imprisonment

---

[2] The trial court summarized the newly discovered evidence as follows:  In support of his motion for new trial based
on newly discovered evidence, the defendant offers the affidavit of Gary Vanover.  In that affidavit, Vanover states
that, while incarcerated, another inmate by the name of Kristopher Dawson told him, among other things, that he
used a black revolver to * * * rob[] a check cashing business located near the Edgecombe Apartments in Milford,
Ohio" sometime in the fall of 2007 around the time of the WEBN fireworks."  (Doc. 5, Ex. 10 at PageID 111–12).

in the Ohio Department of Corrections. (Doc. 5, Ex. 11).

   Petitioner, through new counsel, filed a timely direct appeal on October 6, 2008, which

was affirmed in part and reversed in part by the Ohio Court of Appeals on July 27, 2009. (Doc.

5, Ex. 17, 21).[3] The appeals court affirmed petitioner's assignment of error that the trial court

erred in entering separate convictions and sentences for aggravated robbery and kidnapping.

(Doc. 5, Ex. 21). The case was remanded to the trial court so that the counts could be merged for

sentencing purposes. (*Id.*). On September 11, 2009, petitioner was resentenced by the trial

court. The kidnapping conviction was merged into the aggravated robbery conviction and

petitioner was again sentenced to a twelve-year aggregate prison term. (Doc. 5, Ex. 65).

   Meanwhile, while awaiting re-sentencing, petitioner filed a pro se motion to reopen his

direct appeal. (Doc. 5, Ex. 28). Petitioner asserted that his attorneys were ineffective for failure

to challenge a defective indictment and to argue that petitioner was innocent of the crimes for

which he was convicted. Specifically, petitioner argued that video surveillance demonstrated

that he could not have committed the offenses:

> The victim in this case, stand[s] at 5'6. The appellant, Kevin Thornton, stand[s]
> at 6'4. The videotape of the crime scene clearly show[s] that this was not the
> appellant, Kevin Thornton. The height of the victim and the height of the person
> that did this, they were around the same height, if not the same height.
>
> In light of that fact alone, this clearly could not have been the Appellant, Kevin
> Thornton. Counsel for the Appellant, Kevin Thornton, would not raise this issue,
> along with many other issues that would show beyond a shadow of a doubt, that
> the Appellant, Kevin Thornton, is innocent.

---

[3] Petitioner filed a notice of appeal and a delayed appeal motion to the Ohio Supreme Court from the July 27, 2009
direct appeal judgment. (Doc. 5, Ex. 23, 24). On December 16, 2009 the Ohio Supreme Court granted petitioner's
motion for a delayed appeal. (Doc. 5, Ex. 25). Petitioner filed a memorandum in support of jurisdiction; however,
the Ohio Supreme Court declined jurisdiction on April 14, 2010. (Doc. 5, Ex. 27).

(*Id.* at PageID 1011).  On November 12, 2009, the Ohio Court of Appeals denied petitioner's motion, finding that his claims regarding evidence establishing his innocence were barred by *res judicata* because appellate counsel argued the manifest weight of the evidence on direct appeal and the defective indictment claim was without merit.  (Doc. 5, Ex. 30).  Petitioner unsuccessfully sought review in the Ohio Supreme Court.  (Doc. 5, Ex. 33, 34).

### First Habeas Petition

On July 22, 2010, petitioner filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in *Thornton v. Warden*, Case No. 1:10-cv-497 (S.D. Ohio July 22, 2010) (Barrett, J.; Merz, M.J.).  (Doc. 5, Ex. 35).  In his 2010 petition, as in the instant case, petitioner challenged his 2008 Clermont County aggravated robbery and kidnapping convictions. Petitioner raised the following six grounds for relief:

> **Ground One:**   Trial court violated Petitioner's Fifth and Fourteenth right by denying his motion for mistrial when a state's witness informed jury that a prior proceeding resulted in a hung jury.

> **Ground Two:**  Insufficiency of evidence as no evidence was presented showing that Petitioner participated in the offense charged.

> **Ground Three:**   Trial court erred in denying the Defendant's motion for new trial, based upon highly exculpatory, newly discovered evidence showing another individual committed the crime, violative to the Petitioner's Fifth & Fourteenth Amendment to the U.S. Constitution.

> **Ground Four:**  Defective indictment as it was missing the essential *mens rea* element.  (*i.e. mens rea* not presented to the grand jury, or to the trial court).

> **Ground Five:**  Petitioner received ineffective assistance of trial and appellate counsel.  Trial counsel failed to challenge identification issue, and appellate counsel failed to raise the same.

> **Ground Six:**  Ineffective assistance of appellate counsel.

4

(*Id.* at PageID 1062–68). By motion to amend, petitioner clarified that Ground Six of the petition was based on counsel's failure to raise on appeal that the evidence presented by the state was insufficient to establish petitioner's identity and that the indictment was defective for failure to include a *mens rea* element. (*See* Doc. 5, Ex. 38 at PageID 1124–25).

On August 26, 2011, Magistrate Judge Merz issued a Report and Recommendation, recommending that the petition be dismissed with prejudice and that a certificate of appealability be denied. (Doc. 5, Ex. 42). Specifically, Judge Merz concluded that Ground One was without merit, Grounds Two, Four, and Six were procedurally defaulted, and Ground Three was not cognizable on federal habeas corpus. With respect to Ground Five—that his trial attorney and appellate attorney did not raise the identification issue—Judge Merz noted that petitioner did not explain what he meant by the "identification issue." Judge Merz concluded that to the extent that petitioner claimed there was insufficient evidence to identify him as the offender, this claim was completely addressed in Ground Two of the petition. Otherwise, the ground for relief was procedurally defaulted for failure to raise the claim at any point in the state court proceedings. The Court adopted the Report and Recommendation by Order dated September 27, 2011 and denied petitioner a certificate of appealability. (Doc. 5, Ex. 43).

It appears from the District Court's docket records that petitioner did not pursue an appeal from the District Court's final judgment entry to the Sixth Circuit.

### Delayed Motion for New Trial and Petition for Post-Conviction Relief

On May 23, 2012, petitioner, through new counsel at the Ohio Innocence Project, filed a motion for leave to file a motion for a new trial and petition for post-conviction relief in the Ohio trial court pursuant to Ohio Rule of Criminal Procedure 33 and Ohio Rev. Code § 2953.21.

5

(Doc. 5, Ex. 45, 46).  In the motion for a new trial, petitioner argued that newly acquired

evidence demonstrated his innocence.  Specifically, the zip ties used in the robbery were tested

for DNA and although one male profile was found on both zip ties, the profile did not match

petitioner's DNA.  Petitioner additionally presented a photogrammetrist's evaluation of the

surveillance photos, which concluded that the perpetrator in the photo was 5'11" tall.  (*See id.* at

PageID 1175–76, 1185–87).  The Ohio Court of Appeals provided the following summary of the

new evidence:

> {¶ 6} Approximately two years [after his September 11, 2009 resentencing],
> Thornton contacted the Ohio Innocence Project which requested that DNA testing
> be performed on the zip ties used to bind Fahey's feet and hands at the Cash
> Express.  With the agreement of the Clermont County Prosecutor's Office, on
> November 9, 2011, the trial court entered an order to allow the collection of
> evidence for the purpose of DNA testing. DNA Diagnostics Center, a state-
> certified laboratory, performed Y–Chromosome Short Tandem Repeat (Y–STR)
> DNA testing on the zip ties.

> {¶ 7} "DNA testing has become a forensic tool by which technology can increase
> the public's confidence in the judicial system." *State v. Elliott,* 1st Dist. No. C–
> 050606, 2006–Ohio–4508, ¶ 6.  "'The Y Chromosome is the DNA in the nucleus
> of a cell that is present only in males.'"  *Id.,* quoting C.J. Word, *The Future of
> DNA Testing and Law Enforcement (2001), Speech at the Brooklyn Law School
> Symposium on DNA: Lessons From the Past–Problems For the Future,* in 67
> Brooklyn L. Rev. (Fall 2001), 249, 251, fn. 5.  Y–STR testing became a regularly
> employed form of DNA testing around 2002 and is typically utilized "where DNA
> evidence includes a mixture of male and female DNA." *State v. Metcalf,* 12th
> Dist. No. CA2010–12–326, 2012–Ohio–674, ¶ 16, citing *State v. Prade,* 126 Ohio
> St.3d 27, 2010–Ohio1842, ¶ 21–23; U.S. Department of Justice (July 2002),
> Using DNA to Solve Cold Cases, at 5.  Y–STR DNA testing is used for both
> sexual assault and non-sexual assault cases where mixed samples are collected
> from evidence.  Specifically, Y–STR DNA is useful in cases where there is a
> small amount of male DNA that may be overwhelmed by female DNA in a mixed
> sample.  *See Prade* at ¶ 21.

> {¶ 8} In this case, the Y–STR DNA testing performed on the zip ties revealed a
> single male DNA profile that did not match that of Thornton.  With the agreement
> of Thornton, the entire DNA testing file was submitted to the Ohio Bureau of

6

Criminal Identification and Investigation ("BCI"). BCI's Dr. Elizabeth Benzinger confirmed that the Y–STR DNA testing was performed correctly. Further BCI's testing of the DNA revealed that the DNA found on the zip ties did not match any of the law enforcement officers who worked the crime scene at the Cash Express on September 11, 2007, thereby eliminating the possibility of accidental contamination.

{¶ 9} In addition to the Y–STR DNA testing, the Ohio Innocence Project also contacted Philip F. Locke, Jr., a member of the American Society for Photogrammetry and Remote Sensing, to perform a photogrammetric analysis of the surveillance video. According to Locke, photogrammetry is a science based on triangulation which measures an object in a space where a photograph was taken. A photogrammitrist uses the lines of sight to mathematically produce three-dimensional coordinates to determine specific characteristics like the height of an object or individual.

{¶ 10} According to Locke's photogrammetric analysis, the perpetrator in the surveillance photos captured September 7, 2011 was approximately 5'11" tall with an accuracy rate of plus or minus three-fourths of an inch. Thus, the perpetrator could be no more than 6 feet tall. As the parties stipulated at the 2008 trial that Thornton is 6'3" tall, Locke determined that "it is clear to a reasonable degree of scientific certainty that the perpetrator could not possibly be Kevin Thornton."

(Doc. 5, Ex. 55 at PageID 1352–53).

On August 27, 2012, the trial court denied petitioner's motion. (Doc. 5, Ex. 49). The court first determined that a new trial was not warranted pursuant to Ohio Criminal Rule 33,[4] finding that petitioner failed to demonstrate that he was unavoidably prevented from the discovery of the evidence prior to trial. The court similarly denied petitioner post-conviction relief, again finding that petitioner was not unavoidably prevented from discovering the facts

---

[4] Rule 33 states that "Motions for new trial on account of newly discovered evidence shall be filed within one hundred twenty days after the day upon which the verdict was rendered. . . . If it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely, such motion shall be filed within seven days from an order of the court finding that he was unavoidably prevented from discovering the evidence within the one hundred and twenty day period." Ohio Crim. R. 33(B).

underlying the new evidence.[5]

On September 5, 2012, petitioner, through new counsel also with the Ohio Innocence Project, filed a timely appeal of the trial court's denial of his motion for leave to file a motion for a new trial and petition for post-conviction relief. (Doc. 5, Ex. 50). Petitioner raised the following two assignments of error on appeal:

1.   The trial court erred in denying appellant's motion for leave to file a motion for new trial.

2.   The trial court erred in denying appellant's petition for post-conviction relief.

(Doc. 5, Ex. 52 at PageID 1300). On June 10, 2013, the appeals court affirmed the judgment of the trial court. (Doc. 5, Ex. 55). In addition to agreeing with the trial court that petitioner did not demonstrate that he was unavoidably prevented from discovery of the new evidence prior to his trial, the appeals court found that petitioner failed to show by clear and convincing evidence that, but for the constitutional error of ineffective assistance of trial counsel, no reasonable factfinder would have found him guilty. The appeals court reasoned as follows:[6]

_____

[5]  Under Ohio Rev. Code § 2953.23, the trial court could not entertain a delayed motion for post-conviction relief unless petitioner showed "the petitioner was unavoidably prevented from discovery of the facts upon which petitioner must rely to present the claim for relief . . . [and] petitioner shows by clear and convincing evidence, that but for constitutional error at trial, no reasonable factfinder would have found petitioner guilty of the offense of which the petitioner was convicted." Ohio Rev. Code § 2953.23(A)(1)(a) & (b).

The Court also rejected petitioner's claim that he had established that he was actually innocent under § 2953.23(A)(2), which applies where the petitioner was convicted of a felony and based on DNA testing the petitioner establishes, by clear and convicting evidence, that he or she is actually innocent of the offense. *See* Ohio Rev. Code § 2953.23(A)(2);  (Doc. 5, Ex. 49 at PageID 1252–54).

[6]  The quoted portion of the decision is from the Ohio Court of Appeals' ruling on petitioner's assignment of error that the trial court erred in denying his motion for leave to file a motion for a new trial. The appeals court relied on the same reasoning in overruling petitioner's second assignment of error that the trial court erred in denying his motion for postconviction relief.

8

{¶ 22} In this case, Thornton argues that both the DNA evidence and the photogrammetry analysis were unavoidably unavailable to him until long after trial. Thornton further contends that, had the evidence been presented at trial, there is a strong probability he would not have been found guilty. We find these arguments unpersuasive.

{¶ 23} As to the Y–STR DNA evidence, Thornton is unable to clearly and convincingly demonstrate that he was unavoidably prevented from discovering the DNA evidence before trial or within 120 days after the verdict was rendered. Thornton acknowledges that private laboratories, including DNA Diagnostics Center, were performing Y–STR DNA testing as early as 2005 and certainly in 2007 and 2008 when Thornton's trials were held. However, Thornton's trial counsel acknowledges in an affidavit that he was unaware of Y–STR DNA testing at the time of the trials and that failing to pursue Y–STR DNA testing was not part of his "trial strategy." Trial counsel further admits that he "did not contact any DNA laboratories at the time of either of Kevin Thornton's trials to ascertain whether advanced DNA technologies could help [Thornton's] case."

{¶ 24} Nevertheless, trial counsel's statements that he did not make an effort to test the zip ties and that this was not part of his "trial strategy" do not establish through clear and convincing proof that Thornton was unavoidably prevented from discovering the Y–STR DNA evidence or any DNA evidence. United States courts began introducing DNA evidence in criminal cases as early as 1987 and its use was gradually accepted over the next few decades. Schaffter, *Postconviction DNA Evidence: A 500 Pound Gorilla in State Courts* (2002), 50 Drake L. Rev. 695, 699–700 (footnotes omitted). Furthermore, there is nothing in the record to indicate that Y–STR DNA testing is the best—or only—form of DNA testing available in this type of case and Thornton was well aware of the zip ties during his 2007 and 2008 trials. Thus, Thornton fails to demonstrate, by clear and convincing evidence, that he—with or without the assistance of trial counsel— was unavoidably prevented from seeking the use of any DNA testing, let alone Y– STR DNA testing, at his trials in 2007 or 2008 or within the following 120 days of the guilty verdict.

{¶ 25} As to the photogrammetry analysis of the still frame of the surveillance video taken from the Cash Express, there is no evidence that Thornton was unavoidably prevented from the discovery of this evidence prior to trial or 120 days after the verdict was reached. Rather, the video surveillance footage was available to Thornton and his trial counsel prior to the commencement of his first trial in 2007. In fact, Thornton's trial counsel made an argument at the 2008 trial that the man depicted in the surveillance footage was significantly shorter than Thornton and, therefore, Thornton could not have been the perpetrator. Specifically, trial counsel stated during closing arguments:

> Now, this one if you look at the heights here [indicating a video still of the
> surveillance footage], it's obvious to me anyway if you look at it and you
> examine it—and [Fahey] told us she was about 5 feet 6 inches tall.  Ladies
> and gentlemen, this person here [indicating the perpetrator] is not 6 feet 3
> inches standing next to her.  You know, this person probably is closer.
> She may have been right about the 6 feet height that she gave in her initial
> description to Police Officer Lane, all right?
>
> I mean, they're right there.  Their heads are almost—I mean, there is not—
> if she's 5 foot 6, there is not a 9–inch difference in this photo between her
> height and the height of this person who is the suspect here, the robber,
> okay?  If Kevin Thornton was standing there, he'd be up here some place.
> He'd be up a lot higher.  Take a look at these things.

While trial counsel did not solicit an expert to perform a photogrammetric
analysis and argue this point, the evidence and this argument were clearly
available to Thornton at the time of trial and, thus, there is no reason why he was
unavoidably prevented from discovering the evidence prior to the running of the
120–day time period of Crim.R. 33.

{¶ 26} Thornton also claims that he was financially unable to acquire DNA and
photogrammetric testing at the time of trial and was, therefore, unavoidably
prevented from obtaining this exonerating evidence.  Yet, there is no evidence in
the record that Thornton ever petitioned the trial court for funds to hire an expert
or perform DNA testing.  As Thornton presents no reason why petitioning the trial
court for funds was not an option to him prior to trial, this court cannot say that
Thornton was unavoidably prevented from obtaining the DNA and
photogrammetric testing simply because of his financial status.

{¶ 27} Finally, in viewing the DNA evidence and photogrammetry analysis in the
context of the record as a whole, we do not find that the "new" evidence disclosed
a strong probability that it would change the outcome if a new trial were granted.
As discussed in more detail below, the DNA evidence did not disprove that
Thornton committed the crime but only demonstrated that another male came in
contact with the zip ties.  In addition, the photogrammetric evidence is cumulative
to the argument presented by Thornton's trial counsel that Thornton was too tall
to be the man depicted in the surveillance footage.  Though the photogrammetric
analysis could have bolstered this argument, the jury still heard evidence
regarding Thornton's height and the disparity between his height and the height of
the man depicted in the surveillance footage.   Thus, discovery of the
photogrammetric analysis does not establish a strong probability that the outcome

10

of the trial would have been different had this evidence been available and admitted.

{¶ 28} As provided by the Tenth Appellate District, "the phrases in Crim.R. 33(B) requiring an appellant to show by 'clear and convincing proof' that he or she was 'unavoidably prevented' from discovering evidence do not allow one to claim that evidence was undiscoverable simply because the defense did not undertake efforts to obtain the evidence sooner." *State v. Anderson*, 10th Dist. No. 12AP–133, 2012–Ohio–4733, ¶ 14. Thornton fails to explain why neither he nor his trial counsel could have timely discovered the DNA or photogrammetric evidence. Bald assertions that Thornton could not have timely discovered the evidence is not enough. *See id.* Moreover, "criminal defendants and their trial counsel have a duty to make a 'serious effort' of their own to discover potential favorable evidence." *Id.*

{¶ 29} As such, we find that the trial court did not abuse its discretion in denying Thornton's motion for leave to move for a new trial. Accordingly, Thornton's first assignment of error is overruled.

(Doc. 5, Ex. 55 at PageID 1356–59).

On July 24, 2013, petitioner, through counsel, filed a timely notice of appeal to the Ohio Supreme Court. (Doc. 5, Ex. 57). In his jurisdictional memorandum, petitioner presented the following three assignments of error:

1. In considering a petition for postconviction relief filed under R.C. 2953.23(A)(2), a trial court must consider DNA evidence as well as all available admissible evidence in determining whether a defendant has demonstrated innocence.

2. Where trial counsel fails to retain and utilize appropriate experts, a defendant is deprived of his right to effective assistance of counsel.

3. When exonerative evidence is beyond the reach of a defendant within 120 days of his trial, he is unavoidably prevented from discovering that evidence and should be granted leave to file a new trial motion.

(Doc. 5, Ex. 59). On November 6, 2013, the Ohio Supreme Court declined to accept jurisdiction of the appeal. (Doc. 5, Ex. 61). Petitioner filed a timely motion for reconsideration, which was

11

denied on January 22, 2014.  (Doc. 5, Ex. 62, 64).

## Second Post-Conviction Petition

Petitioner, again through counsel, filed a second petition for post-conviction relief in the

Ohio Court of Common Pleas on June 13, 2014.  (Doc. 28, Ex. 1).  Petitioner argued that the

evidence submitted to the trial court demonstrated that he is actually innocent of the crimes of

which he was convicted.  On September 19, 2014, the court denied the petition, finding that

petitioner's actual innocence claim was not itself a substantive ground for post-conviction relief

and that petitioner failed to meet the requirements under Ohio Rev. Code §§ 2953.21 or 2953.23

for filing an untimely or successive petition for post-conviction relief.  (Doc. 28, Ex. 5 at PageID

1771).

Petitioner unsuccessfully sought review in the Ohio Court of Appeals (Doc. 28, Ex. 6, 13)

and in the Ohio Supreme Court.  (Doc. 28, Ex. 14, 15, 17).  The Ohio Supreme Court declined to

accept jurisdiction of petitioner's appeal on December 2, 2015.  (*See* Doc. 28, Ex. 17).

## Current Federal Habeas Petition

Meanwhile, on July 8, 2014, petitioner, through counsel, filed the instant habeas corpus

petition.  (Doc. 1).  After respondent filed a return of writ (Doc. 6), to which petitioner replied

(Doc. 13), petitioner filed a motion to hold the petition in abeyance pending exhaustion of state

court remedies.  (Doc. 14).  At the time of filing, petitioner's appeal from the trial court's denial

of his second post-conviction petition was pending in the Ohio appeals court.  On July 21, 2015,

the Court issued an Order adopting the undersigned's Report and Recommendation to hold the

petition in abeyance pending exhaustion in the state courts.  (Doc. 21).

This case was reopened on December 30, 2015.  (Doc. 24).  In his amended petition,

12

petitioner raises two grounds for relief. In Ground One, petitioner claims that trial counsel was ineffective for failure to investigate the available, scientific evidence applicable to petitioner's trial. According to petitioner, counsel's failure to pursue DNA testing or photogrammetry analysis prejudiced him to the point that he was deprived of a fair trial. In the second ground for relief, petitioner asserts an actual innocence claim.

Respondent has now moved this Court to transfer the petition to the United States Court of Appeals for the Sixth Circuit as a successive petition within the meaning of 28 U.S.C. § 2244(b). (Doc. 29). Petitioner opposes the motion, arguing that the petition is not successive and therefore the motion should be denied. (Doc. 34).

## II. RESPONDENT'S MOTION SHOULD BE GRANTED (Doc. 29) AND THE PETITION TRANSFERRED TO THE SIXTH CIRCUIT COURT OF APPEALS

Pursuant to 28 U.S.C. § 2244(b)(1), the federal district court must dismiss a claim presented in a second or successive habeas corpus petition that was raised in a prior petition. In addition, the court must dismiss a claim presented in a second or successive petition, which the petitioner did not include in the prior petition, unless: (1)(a) petitioner shows the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the United States Supreme Court, that was previously unavailable; or (b) the factual basis for the claim could not have been discovered previously through the exercise of due diligence; and (2) the facts would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable fact-finder would have found the petitioner guilty of the underlying offense. 28 U.S.C. § 2244(b)(2).

13

Before the district court may consider a successive petition, the petitioner must first request and obtain authorization for such consideration from the court of appeals. 28 U.S.C. § 2244(b)(3). The court of appeals may authorize the district court to consider a successive petition only if petitioner makes the *prima facie* showing described above. *Id. See Magwood v. Patterson*, 561 U.S. 320, 330–31 (2010); *In re Cook,* 215 F.3d 606, 607 (6th Cir. 2000). The subsequent petition must relate to the same conviction or sentence under attack in the prior petition to be "successive" within the meaning of the statute. *See In re Page,* 179 F.3d 1024, 1025 (7th Cir. 1999) (and cases cited therein). However, not all subsequent petitions relating to the same conviction or sentence are considered successive. *See Stewart v. Martinez-Villareal,* 523 U.S. 637 (1998). Otherwise, "a dismissal of a first habeas petition for technical procedural reasons would bar the prisoner from ever obtaining federal habeas review." *Id.* at 645.

Courts have held that a later petition is not successive where the first petition was dismissed as premature, *see id.*; the first petition was dismissed without prejudice for failure to exhaust state court remedies, *see Slack v. McDaniel,* 529 U.S. 473, 485-86 (2000); *Carlson v. Pitcher,* 137 F.3d 416 (6th Cir. 1998); the second petition was filed after a remedial appeal ordered in response to the prior petition, *see Storey v. Vasbinder*, 657 F.3d 372, 377-78 (6th Cir. 2011); or the first petition was dismissed because petitioner failed to either pay the filing fee or provide proper support for his application for pauper status, *see Stewart,* 523 U.S. at 645 (citing *Marsh v. United States Dist. Court for the N. Dist. of California,* No. C-94-0581-VRW, 1995 WL 23942 (N.D. Cal. Jan. 9, 1995)). In all of those contexts, the district court had jurisdiction to consider the subsequent petitions without first obtaining authorization from the court of appeals, because the prior dispositions were not "on the merits." *See Slack,* 529 U.S. at 485-86; *Carlson,*

14

137 F.3d at 419; *Camarano v. Irvin,* 98 F.3d 44, 46-47 (2nd Cir. 1996); *cf. Storey*, 657 F.3d at

377-78 (where initial petition involved disposition of only one constitutional claim—*i.e.*,

whether the petitioner was entitled to a new direct appeal).

In contrast, when a prior petition is dismissed because the petitioner procedurally

defaulted his claims in state court, the dismissal qualifies as a decision "on the merits." In such a

case, the prisoner must obtain authorization from the court of appeals pursuant to § 2244(b)(3)

before filing a subsequent federal habeas application. *In re Cook,* 215 F.3d 606, 608 (6th Cir.

2000); *Carter v. United States,* 150 F.3d 202, 205-06 (2nd Cir. 1998). Similarly, when the prior

petition is dismissed on the ground that it is barred by the statute of limitations, the dismissal is

an adjudication of the merits of the claims, and petitioner must obtain prior authorization from

the court of appeals entitling him to file a subsequent petition for habeas corpus relief. *See, e.g.,*

*McNabb v. Yates,* 576 F.3d 1028, 1030 (9th Cir. 2009); *Murray v. Greiner,* 394 F.3d 78, 81 (2nd

Cir. 2005); *Altman v. Benik,* 337 F.3d 764, 766 (7th Cir. 2003); *Staffney v. Booker,* No.

2:09cv14553, 2009 WL 4506425, at *1 (E.D. Mich. Nov. 25, 2009) (transferring the petition to

the Sixth Circuit as a successive petition).[7]

The Supreme Court has held that a habeas corpus petition is not successive and § 2244(b)

does not apply when it is the first application challenging a new judgment, such as a new

sentence imposed on resentencing, that occurs between habeas proceedings. *See Magwood v.*

*Patterson*, 561 U.S. 320, 331-39 (2010). Although the *Magwood* Court expressly declined to

address whether the petitioner is allowed to challenge "not only his resulting, *new* sentence, but

---

[7] *Contrast Gonzalez v. Crosby,* 545 U.S. 524, 535-36 (2005) (a motion for relief from judgment under Fed. R. Civ.
P. 60(b), which "challenges only the District Court's previous ruling on the AEDPA statute of limitations, ... is not
the equivalent of a successive habeas petition").

also his original, *undisturbed* conviction" in the subsequent application, *see id.* at 342 (emphasis

in original), the Sixth Circuit has recently held that "a new judgment" entered following an

intervening proceeding, such as resentencing, "permits the inmate to challenge the original

conviction," as well as the intervening new judgment, "without clearing the second-or-successive

hurdles." *King v. Morgan*, 807 F.3d 154, 159 (6th Cir. 2015), *reversing*, No. 1:12cv2000, 2013

WL 5531365 (N.D. Ohio Sept. 26, 2013); *see also In re Stansell,* 828 F.3d 412, 416 (6th Cir.

2016).

 In this case, petitioner is attacking the same conviction and sentence that he challenged in

his prior habeas corpus petition and has remained in effect since petitioner was resentenced on

September 11, 2009. It is also clear that no "new judgment" has been entered by the state courts

in any intervening proceeding that has occurred after the adjudication of petitioner's prior habeas

petition. Therefore, this case does not involve any intervening judgment that falls within the

exception recognized in *King, In re Stansell,* and *Magwood* for bypassing the requirements

governing second or successive petitions that is set forth in 28 U.S.C. § 2244(b).

 To the extent that petitioner raises any of the same claims as in his prior petition, these

claims must be dismissed.[8] 28 U.S.C. § 2241(b)(1). Furthermore, petitioner has not

demonstrated that his new claims rely on a new rule of constitutional law, made retroactive to

cases on collateral review by the United States Supreme Court. 28 U.S.C. § 2241(b)(2)(A). The

Court therefore must determine whether the factual basis for the claims petitioner now seeks to

raise in his second petition could have been discovered previously through the exercise of due

---

[8] As noted above, in Ground Five of his prior petition, petitioner argued that his trial and appellate counsel were ineffective for failure to raise the "identification issue." (*See* Doc. 5, Ex. 35 at PageID 1068). To the extent that petitioner raises the same claim in the instant petition, this claim is subject to dismissal under § 2244(b)(1).

diligence and, if so, if the facts would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable fact-finder would have found the petitioner guilty of the underlying offense. 28 U.S.C. § 2244(b)(2)(B).

Petitioner contends that he could not have raised his claims in his prior petition because they were not ripe. According to petitioner, he could not have discovered the factual predicate for his claims prior to the release of the photogrammetry analysis and the results of the DNA test. (Doc. 13 at PageID 1521; Doc. 34 at PageID 1893). Petitioner relies on the Supreme Court's decision in *Panetti v. Quarterman*, 551 U.S. 930 (2007) in support of his argument that his claims were not ripe and, therefore, the petition is not successive. *Id.*

In *Panetti*, the Supreme Court held that an incompetency-to-be-executed claim under *Ford v. Wainwright*, 477 U.S. 399 (1986), raised in a second-in-time federal habeas corpus petition was not successive under § 2244(b). The *Panetti* Court noted that *Ford*-based incompetency claims are generally not ripe until after the time has run to file a first federal habeas petition—that is, not until the time of the petitioner's scheduled execution. *Id.* at 943. Based on the "unusual posture" of the *Ford* claim, the Court held that the statutory bar on successive applications for federal habeas corpus did not apply and the district court had jurisdiction to adjudicate the claim. *Id.* at 945.

However, unlike the *Ford* claim in *Panetti*, petitioner's ineffective assistance of counsel and actual innocence claims were ripe prior to filing his first habeas petition. In *Thompkins v. Secretary, Dept. of Corrections*, 557 F.3d 1257 (11th Cir. 2009), for example, the petitioner similarly tried to extend *Panetti* beyond the context of a *Ford* incompetency claim. Noting that the petitioner's claims "are claims that can be and routinely are raised in initial habeas petitions"

17

and such violations "occur, if at all, at trial or sentencing and are ripe for inclusion in a first

petition," the Eleventh Circuit declined to extend *Panetti* to his claims:

> Tompkins would have us hold that any claim based on new evidence is not "ripe"
> for presentation until the evidence is discovered, even if that discovery comes
> years after the initial habeas petition is filed. That is not what the Supreme Court
> in *Panetti* meant by "ripe." Mental competency to be executed is measured at the
> time of execution, not years before then. . . . The reason the *Ford* claim was not
> ripe at the time of the first petition in *Panetti* is not that evidence of an existing or
> past fact had not been uncovered at that time. Instead, the reason it was unripe
> was that no *Ford* claim is ever ripe at the time of the first petition because the
> facts to be measured or proven—the mental state of the petitioner *at the time of
> execution*—do not and cannot exist when the execution is years away.

*Id.* at 1260–61 (emphasis added). Similarly, in *Florez-Ramirez v. Foster*, 811 F.3d 861 (7th Cir.

2016), the Seventh Circuit advised that "when discerning whether a second-in-time petition is

successive, courts must be careful to distinguish genuinely unripe claims (where the factual

predicate that gives rise to the claim has not yet occurred) from those in which the petitioner

merely has some excuse for failing to raise the claim in his initial petition (such as when newly

discovered evidence supports a claim that the petitioner received ineffective assistance of

counsel); only the former class of petitions escapes classification as 'second or successive.'" *Id.*

at 865 (quoting *U.S. v. Obeid*, 707 F.3d 898, 902 (7th Cir. 2013)). *See also Gage v. Chappell*,

793 F.3d 1159 (9th Cir. 2015) (noting that the court has distinguished "between petitions

containing claims, the factual predicate of which came into being after the first habeas petition—

such as the mental incompetency claim in *Panetti*—and those containing claims that were ripe at

the conclusion of a first habeas proceeding but were not discovered until afterward") (internal

quotation marks and citations omitted); *Jeremiah v. Terry*, 322 F. App'x 842, 845 (11th Cir.

2009) (rejecting the argument that a claim of actual innocence was not ripe at the time of the

petitioner's first § 2254 petition because the petitioner had not obtained the new evidence demonstrating his actual innocence until after the filing of the petition because the factual predicate for the actual innocence claim existed at the time of the filing of the first habeas petition). In the instant case, the facts underlying petitioner's ineffective assistance of counsel claim and actual innocence claim existed and were discoverable at the time petitioner filed his first habeas petition. Because the questions of whether trial counsel was ineffective for failing to investigate scientific evidence in petitioner's case, as well as whether petitioner is actually innocent of the charges, were ripe at the time of trial and when petitioner filed his first habeas petition, these claims do not fall within the *Panetti* exception.

   Petitioner has otherwise failed to demonstrate that the factual basis for his claims could not have been discovered previously through the exercise of due diligence. As noted by the Ohio courts, the surveillance footage and zip ties were available for testing prior to the commencement of his first trial in 2007, more than two years before petitioner filed his first petition. Furthermore, although petitioner argues that Ohio Bureau of Criminal Investigation and Identification did not perform Y-STR testing at the time of petitioner's trial, petitioner does not dispute the state court finding that the DNA test was commonly utilized by private laboratories at that time. (*See* Doc. 5, Ex. 55 at PageID 1357 ("Thornton acknowledges that private laboratories, including DNA Diagnostics Center, were performing Y–STR DNA testing as early as 2005 and certainly in 2007 and 2008 when Thornton's trials were held.")) Petitioner has also made no showing that the photogrammetry test was unavailable at the time of his trial.

   Petitioner contends that he was indigent at the time of trial and relied on the services of court-appointed counsel. On this basis, petitioner argues that he could not obtain the new

19

evidence prior to trial or within Ohio's timeframe for filing new trial motions or postconviction

petitions. (*See* Doc. 34 at PageID 1893–94). However, the question before this Court is whether

petitioner could have discovered the new evidence through the exercise of due diligence prior to

filing his first habeas corpus petition in 2010. Although trial counsel did not solicit an expert in

photogrammetry analysis or test the zip ties for DNA, counsel's failure to do so does not mean

that petitioner could not have discovered the evidence through the exercise of due diligence prior

to filing his first habeas corpus petition. *See In re Boshears*, 110 F.3d 1538, 1540 (4th Cir. 2007)

("An application that merely alleges that the applicant did not actually know the facts underlying

his or her claim does not pass [§ 2244(b)(2)(B)(ii)]. Criminal defendants are presumed to have

conducted a reasonable investigation of all facts surrounding their prosecution.") (citing

*McCleskey v. Zant*, 499 U.S. 467, 498 (1991) (recognizing "the principle that petitioner must

conduct a reasonable and diligent investigation aimed at including all relevant claims and

grounds for relief in the first federal habeas petition")). Petitioner does not explain, for example,

why he waited several years after his trial[9] to seek out the assistance of the Ohio Innocence

Project. *See In re Lambrix*, 776 F.3d 789, 795 (11th Cir. 2015) (denying the petitioner leave to

file a second or successive petition based, in part, on petitioner's failure "to explain why his

evidence could not have been uncovered through a reasonable investigation prior to the litigation

of his initial § 2254 petition or why the means that eventually uncovered his new evidence could

not have been employed earlier.").

---

[9] In his motion for a new trial, petitioner indicates that he contacted the Ohio Innocence Project "[s]everal years after the trial." (Doc. 5, Ex. 46 at PageID 1185). Petitioner's motion for leave to file a motion for new trial and petition for postconviction relief indicates that petitioner's case came to the attention of the Ohio Innocence Project "[n]early four years into his 12 year sentence." (Doc. 5, Ex. 45 at PageID 1175).

Accordingly, the undersigned concludes that petitioner's petition for a writ of habeas corpus is "successive" within the meaning of § 2244(b) because petitioner's prior habeas petition was adjudicated on the merits and petitioner is not contesting any "new judgment" in this proceeding. Moreover, as to petitioner's new claims for relief in the instant petition, the claims are successive under 28 U.S.C. § 2244(b)(2) because petitioner has not shown they rely on a new rule of constitutional law, made retroactive to cases on collateral review by the United States Supreme Court, that was previously unavailable, or that the factual basis for the claims could not have been discovered previously through the exercise of due diligence.

In sum, because the instant habeas corpus petition is successive within the meaning of 28 U.S.C. § 2244(b), this Court lacks jurisdiction to consider it in the absence of prior authorization by the Sixth Circuit. When a prisoner has filed a successive petition for habeas corpus relief in the district court without first obtaining authorization from the Court of Appeals, the district court in the interest of justice pursuant to 28 U.S.C. § 1631 is required to transfer the case to the Sixth Circuit for consideration as required under § 2244(b)(3). *See In re Sims,* 111 F.3d 45, 47 (6th Cir. 1997) (citing *Liriano v. United States,* 95 F.3d 119, 122 (2nd Cir. 1996)); *see also Withers v. Warden, Chillicothe Corr. Inst.*, No. 2:15cv129, 2015 WL 965674, at *2-3 (S.D. Ohio Mar. 4, 2015) (Kemp, M.J.), *adopted*, 2015 WL 1212556 (S.D. Ohio Mar. 16, 2015) (Economus, J.). Therefore, respondent's motion to transfer the instant petition to the Sixth Circuit for review and determination whether the district court should be granted authorization to entertain it (Doc. 29) should be **GRANTED**.

## IT IS THEREFORE RECOMMENDED THAT:

Because this Court lacks jurisdiction in this matter involving a successive habeas petition

within the meaning of 28 U.S.C. § 2244(b), respondent's motion to transfer the petition to the

United States Court of Appeals for the Sixth Circuit (Doc. 29) be **GRANTED**.

Date: 12/19/16

Karen L. Litkovitz
United States Magistrate Judge

22

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KEVIN MICHAEL THORNTON,               Case No. 1:14-cv-561
          Petitioner,

                                      Barrett, J.
     vs.                              Litkovitz, M.J.

WARDEN, MADISON
CORRECTIONAL INSTITUTION,
          Respondent.


NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations.   This period may be extended further by the Court on

timely motion for an extension.   Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections.   If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs.   A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof.   Failure to make objections in

accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140

(1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

23