# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

KEVIN MICHAEL THORNTON,

                Petitioner,     :     Case No. 1:14-cv-561

    - vs -                       District Judge Michael R. Barrett
                                   Magistrate Judge Michael R. Merz

TIM BUCHANAN[1], Warden,
  Noble Correctional Institution

                                   :

                Respondent.

## REPORT AND RECOMMENDATIONS; DECISION AND ORDER DENYING MOTION FOR EVIDENTIARY HEARING

This habeas corpus case under 28 U.S.C. § 2254 is before the Court for decision on the merits as presented by Petitioner Kevin Michael Thornton's Second/Successive Petition for Writ of Habeas Corpus (ECF No. 47), the Warden's Return of Writ (ECF No. 52), the State Court Record (ECF Nos. 5 and 51), and Petitioner's Traverse (ECF No. 56). Also pending is Petitioner's Motion for Evidentiary Hearing (ECF No. 61). Respondent opposes the Motion (ECF No. 66) and Petitioner has filed a Reply in support (ECF No. 67).

**Litigation History**

On September 21, 2007, a Clermont County, Ohio, grand jury indicted Petitioner for the

---

[1] Respondent's counsel advises that Petitioner is now incarcerated at Noble Correctional Institution and its current Warden, Tim Buchanan, is Petitioner's custodian. Pursuant to Fed.R.Civ.P. 25(d), Mr. Buchanan is substituted as Respondent and the caption amended as set forth above.

1

September 11, 2007, armed robbery of the Cash Express on Main Street in Milford, Ohio. A first trial jury was unable to reach a verdict. At a second trial he was convicted of aggravated robbery, kidnapping, and a firearm specification and sentenced to twelve years imprisonment.

The Twelfth District Court of Appeals affirmed except for finding that the robbery and kidnapping offenses should be merged under Ohio Revised Code § 2941.25. *State v. Thornton,* 12th Dist. Clermont No. CA2008-10-92, 2009-Ohio-3685 (Jul. 27, 2009), appellate jurisdiction declined, 124 Ohio St. 3d 1539 (2010).

On August 31, 2009, Thornton filed an Application for Reopening the direct appeal under Ohio R. App. P. 26(B), asserting in part that he received ineffective assistance of appellate counsel when his appellate counsel did not raise the claim that the store surveillance video record showed he was taller than the perpetrator. (State Court Record, ECF No. 5-28, PageID 1008-22). The Twelfth District characterized this as a manifest weight of the evidence claim and rejected it as *res judicata* because a manifest weight claim had been raised and decided. *State v. Thornton*, No. CA2008-10-092 (12th Dist. Nov. 12, 2009) (unreported; copy at State Court Record, ECF No. 5-30, PageID 1035-38.), appellate jurisdiction declined, *State v. Thornton*, Case No. 2009-2171 (Jan. 27, 2010) (Entry, State Court Record, ECF No. 5-34).

Thornton filed a *pro se* petition for writ of habeas corpus in this Court July 22, 2010 (Case No. 1:10-cv-497). The undersigned recommended dismissal and District Judge Barrett adopted that recommendation on September 27, 2011. *Id*. at ECF Nos. 25-26. Thornton did not appeal.

Thornton then obtained representation from the Ohio Innocence Project. Attorney Karla Hall of the Project filed a motion for leave to file a delayed motion for new trial or a delayed petition for post-conviction relief on Thornton's behalf on May 23, 2012. The Clermont County Court of Common Pleas denied relief (State Court Record, ECF No. 5-49, PageID 1256.).

2

Thornton appealed, and the Twelfth District affirmed. *State v. Thornton*, 12th Dist. Clermont No. CA2012-09-63, 2013-Ohio-2394 (Jun. 10, 2013), appellate jurisdiction declined, 136 Ohio St. 3d 1559 (2013).

Thornton, still represented by Innocence Project attorneys, filed his Petition in this current case July 8, 2014 (ECF No. 1). On October 27, 2014, Petitioner moved to stay this case pending exhaustion of his actual innocence claim for relief in the Ohio courts (ECF No. 14). On Magistrate Judge Litkovitz's recommendation (ECF No. 20), District Judge Barrett granted that Motion July 21, 2015 (ECF No. 21), then reopened the case after exhaustion on December 30, 2015 (ECF No. 24). On December 19, 2016, Magistrate Judge Litkovitz recommended the case be transferred to the United States Court of Appeals for the Sixth Circuit as a second or successive habeas petition (Report and Recommendations, ECF No. 35). Judge Barrett adopted that recommendation March 22, 2017 (ECF No. 41).

The Sixth Circuit then granted Thornton permission to file a second or successive petition. *In re: Thornton*, No. 17-3282, 2017 U.S. App. LEXIS 23284 (6th Cir. Nov. 17, 2017). The court concluded Thornton's ineffective assistance of trial counsel claim was not the same claim he had raised in the earlier petition:

> The State of Ohio argues that Thornton's first claim—that trial counsel rendered ineffective assistance by failing to obtain DNA testing or photogrammetric analysis—is duplicative of a claim in his original habeas petition—that trial and appellate counsel rendered ineffective assistance by failing to raise "the identification issue." But this is not the same claim—Thornton is now challenging counsel's failure to obtain evidence, not counsel's failure to raise an ambiguously defined issue.

*Id.* at *5. Applying the standard from 28 U.S.C. § 2244(b)(2)(B)(i) and (ii), the court concluded:

> Thornton argues that his claims rely on newly discovered evidence in the form of the results of his Y-STR DNA testing and photogrammetric analysis. Both of these appear to be new evidence.

3

> The State of Ohio argues that Y-STR DNA testing and photogrammetric analysis were possible prior to trial, and the materials in question were available prior to Thornton's first petition. But, although it was theoretically possible for Thornton to have sought Y-STR DNA testing and photogrammetric analysis in conjunction with his first petition, it is hard to imagine how, even with the exercise of due diligence, he could have known to do so. As noted by the Ohio Court of Appeals, even trial counsel "was unaware of Y-STR DNA testing at the time of the trials." *Thornton*, 2013-Ohio-2394, 2013 WL 2636129, at *5.
>
> Thornton has made a prima facie showing that, if taken in light of the evidence as a whole, this newly discovered evidence would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found him guilty of the underlying offense. "'Prima facie' in this context means simply sufficient allegations of fact together with some documentation that would 'warrant a fuller exploration in the district court.'" *Lott*, 366 F.3d at 433 (quoting *Bennett v. United States*, 119 F.3d 468, 469 (7th Cir. 1997)). The fact that DNA results from the zip ties would not have named Thornton as a source raises doubts as to his guilt. And, as noted by the trial court, "[t]he findings of the photogrammetry expert might have gone a long way toward confirming the argument . . . that [Thornton] is too tall to be the perpetrator seen on the surveillance video."

*Id.* at *5-6. Given that permission, Thornton moved to reopen this case (ECF No. 45). Magistrate Judge Litkovitz granted leave and Thornton filed his Second/Successive Petition January 2, 2018 (ECF No. 47). Respondent supplemented the previously filed State Court Record (ECF No. 51) and filed an Answer/Return of Writ (ECF No. 52). After Petitioner filed his Reply (ECF No. 56), the Magistrate Judge reference in the case was transferred to the undersigned February 11, 2019 (ECF No. 57). Noting that the Petition asked for discovery and an evidentiary hearing, the undersigned asked Petitioner to brief those two requests. That briefing being complete, the case is ripe for decision.

# Analysis

Thornton's Second/Successive Habeas Corpus Petition pleads two Claims for Relief. The First Claim is that "[b]y failing to investigate the available, scientific evidence in the case, Mr. Thornton's trial counsel performed deficiently and prejudiced Mr. Thornton, thereby depriving Mr. Thornton of his right to effective assistance of counsel as secured by the Sixth and Fourteenth Amendments to the United States Constitution." (ECF No. 47, PageID 2058). The Second Claim is that "[u]nder *Herrera v. Collins*, 506 U.S. 390 (1993), Mr. Thornton is entitled to habeas relief because he is actually innocent of the crime of which he has been convicted." *Id.* at PageID 2060.

**The Statute of Limitations**

Respondent argues the Petition should be dismissed as barred by the statute of limitations. That statute, 28 U.S.C. § 2244(d), provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of —
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has

5

> been newly recognized by the Supreme Court and made
> retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or
> claims presented could have been discovered through the
> exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-
> conviction or other collateral review with respect to the pertinent
> judgment or claim is pending shall not be counted toward any period
> of limitation under this subsection.

Respondent calculates that Thornton's conviction became final on direct appeal on July 13, 2010, the last day on which he could have sought a writ of certiorari from the United States Supreme Court. Thus, the statute as calculated under § 2244(d)(1)(A) expired July 14, 2011 (Return, ECF No. 52, PageID 2235). The Petition here was not filed until July 8, 2014, almost three years later.

Petitioner concedes the accuracy of that calculation under § 2244(d)(1)(A), but claims the benefit of (d)(1)(D), asserting that "the factual predicate of his claims were [sic] not known until March 27, 2012, when DNA Diagnostics Center issued the report regarding the presence of DNA on the zip ties." (Traverse, ECF No. 56, PageID 2264).

The test in § 2244(d)(1)(D) is not the date of actual discovery of the factual predicate, but the date when the predicate could have been learned through the exercise of due diligence. Noting Respondent's argument that Thornton did not even pursue DNA and photogrammetric evidence until "years after his conviction," Petitioner's counsel rejoins, however, that this argument "ignores . . . the nature of the evidence in this case."

> The factual predicate upon which Mr. Thornton's claims rely
> consists of scientific testing—testing that was, in fact, not widely
> known even among the defense bar or to prosecutors in the State of
> Ohio at the time of Mr. Thornton's conviction. Indeed, a Westlaw
> search for "photogrammetry" or "photogrammetric" yields only

> three cases, apart from the Twelfth District's decision affirming the
> denial of postconviction relief to Mr. Thornton [footnote omitted].

(Traverse, ECF No. 56, PageID 2264).

This argument misses the point. The question is not whether Thornton exercised due diligence to pursue scientific testing whose nature and availability were unknown to him and indeed to most of the bar in 2008 when he was tried.[2] The question is what Thornton did to pursue any new evidence.

In denying Thornton's Motion for Leave to File a delayed motion for new trial or post-conviction petition, Judge McBride found that there was not clear and convincing proof that this new evidence was unavailable prior to trial in that both types of scientific evidence in fact existed and Thornton could have sought funds to pay for them (Decision, State Court Record, ECF No. 5-49, PageID 1251).

On appeal, the Twelfth District found that Thornton contacted the Innocence Project approximately two years after being re-sentenced on September 11, 2009 (Opinion, State Court Record, ECF No. 5-55, PageID 1352, ¶¶ 5-6.) That court affirmed the findings of the trial court that both types of scientific testing were available at the time of trial. *Id*. at PageID 1357-58, ¶¶ 23-26. It is also true that the evidence upon which the testing was performed – the ties and the surveillance video – were both available for testing prior to trial and known to Thornton and his counsel.

Thornton has not presented any evidence to this Court to overcome these relevant factual findings by the Ohio courts, which are therefore entitled to deference under 28 U.S.C. § 2254(d)(2). And if Thornton was not unavoidably prevented from discovering this evidence in 2007-2008, he

---

[2] Note that his trial attorney Jim Hunt filed an affidavit on July 11. 2012, in support of the new trial motion which avers he did not know of Y-STR DNA testing at the time of either trial (Hunt Aff., ECF No. 56-1), PageID 2272, ¶¶ 3-5).

has shown even less due diligence in pursuing this evidence between being re-sentenced in September 2009 and when he contacted the Innocence Project in 2011?

The burden is on a habeas petitioner to show that he has exercised due diligence in seeking the factual predicate of his claims. *Jefferson v. United States*, 730 F.3d 537, 544 (6th Cir. 2013). "This standard 'does not require maximum feasible diligence, but only due, or reasonable diligence.'" *Id.*, quoting *DiCenzi v. Rose,* 452 F.3d 465, 470 (6th Cir. 2006). But here, Thornton has made no demonstration that he exercised due diligence in the two years between his re-sentencing and his contact with the Innocence Project.

In addition to relying on the discovery date under 28 U.S.C. § 2244(d)(1)(D), Thornton also relies on his claim of actual innocence to overcome the barrier of the statute, relying on *Schlup v. Delo,* 513 U.S. 298 (1995), and *McQuiggin v. Perkins,* 569 U.S. 383 (2013) (Traverse, ECF No. 56, PageID 2266). In *McQuiggin*, the Supreme Court did recognize an equitable exception to the statute of limitations for cases where the petitioner produces evidence of actual innocence which would satisfy the *Schlup* "'actual innocence' gateway to federal habeas review[.]" 569 U.S. at 386, 401. As the Sixth Circuit has explained,

> [I]f a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless [*sic*] constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup v. Delo,* 513 U.S. 298, 316 (1995)." Thus, the threshold inquiry is whether "new facts raise[] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id.* at 317. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 140 L.Ed.2d 828, 118 S.Ct. 1604 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific

8

> evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Id.* at 321.

*Souter v. Jones,* 395 F.3d 577, 589-90 (6th Cir. 2005).

Thornton has produced evidence of the quality required by *Schlup*, 513 U.S. at 324: both the DNA test results and the photogrammetric evidence are new scientific evidence not presented at trial. However, this evidence is not so strong as to prove that it is more likely than not that no reasonable juror would have found Thornton guilty beyond a reasonable doubt.

First, take the DNA evidence. The Magistrate Judge takes it as established that the DNA tested by Dr. Heinig from the ties was that of a male other than Thornton (Petition, ECF No. 47, PageID 2057). But that does not prove Thornton was not the perpetrator. Although the depositor of the DNA has not been identified, there are numerous ways as found by the state courts that another male who was not the perpetrator could have deposited the DNA. Moreover, there is strong evidence from both the victim and the surveillance footage that the perpetrator, whoever he or she was, wore gloves during the crime which would have prevented the deposit of DNA (ECF No. 52, PageID 2240-41, citing Trial Trans., ECF No. 5-12, PageID 271).

The photogrammetric evidence, which appears to be stronger than the DNA, nevertheless has not been subjected to cross-examination or the laying of a scientific foundation such as is required by *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993). As the Twelfth District found, the jury was able to make the height comparison in the video surveillance and heard argument that Thornton was taller than the perpetrator. *Thornton*, 2013-Ohio-2394, at ¶ 27.

Precedent requires us to consider not only the new evidence, but the other evidence of guilt presented at trial. Thornton was a person known to the Milford, Ohio, police and was identified

9

by them from the surveillance video. When they executed a search warrant at his residence, he commented to his mother in their presence that they thought he had robbed the Cash Express before any mention of that robbery had occurred. Having claimed that he had been at home with his mother when the crime occurred, he changed his story after it was shown that she was not at home at the time and he produced no other alibi witness. 2013-Ohio-2394, at ¶¶ 2-3. He voluntarily confessed the crime to another person.[3] The victim identified Thornton in a photographic lineup about which no claim of suggestiveness has been made. She also identified clothing recovered from Thornton's residence as the clothing worn by the perpetrator. *Id*. at ¶ 44.

In sum, the DNA evidence is equivocal and the photogrammetric evidence is cumulative. When considered with the other evidence of guilt presented at trial, the Magistrate Judge concludes Thornton has not satisfied the *Schlup* gateway requirements. The Petition should therefore be dismissed as time-barred.

In the interest of completeness, however, the Court considers both claims made in the Petition and Respondent's defenses.

**Ground One: Ineffective Assistance of Trial Counsel**

In his First Claim for Relief, Thornton claims he received ineffective assistance of trial counsel when his trial attorney failed to obtain and present Y-STR DNA testing of the zip ties used to bind the victim and photogrammetric analysis of the comparative heights of the perpetrator shown in the surveillance video of the crime and Thornton himself. The conclusion of the Ohio

---

[3] Thornton's counsel characterize this witness as one of those infamous jailhouse snitches about whom so much has been written and even seek to present expert testimony on the unreliability of such testimony. The Twelfth District, however, characterized this witness as a friend of Thornton's. (ECF No. 5-55, ¶ 44).

courts to the contrary allegedly "constitutes an unreasonable application of clearly established federal law." (Second/Successive Petition, ECF No. 47, PageID 2058).

Thornton does not seek an evidentiary hearing on Claim Two, but only on Claim One (Motion, ECF No. 61, PageID 2284). In support of Ground One he seeks to present the testimony of (1) Julie Heinig, a witness who conducted Y-STR DNA testing on the zip tie used to bind the victim; (2) Phil Locke, a witness who performed photogrammetric analysis on the surveillance video footage; (3) James Hunt, Thornton's trial attorney; and (4) one or more experts regarding the unreliability of informant testimony. *Id.* at PageID 2286-87.

Petitioner asserts that *Cullen v. Pinholster*, 563 U.S. 170 (2011), does not preclude the evidentiary hearing he seeks, because the Ohio courts did not rule on the merits of his ineffective assistance of trial counsel claim (Reply, ECF No. 67, PageID 2303). He avers this claim was first presented to the Ohio courts in his motion for leave to file a new trial motion or a delayed petition for post-conviction relief (Motion, ECF No. 61, PageID 2282-83, citing State Court Record, ECF Nos. 5-45, 5-46). He asserts the Clermont County Common Pleas Court did not address the merits of his ineffective assistance of trial counsel claim. *Id.* at PageID 2283.

The Common Pleas Court denied leave to file a delayed motion for new trial or a delayed petition for post-conviction relief because Thornton had failed to show he was unavoidably prevented from discovering the DNA and photogrammetry evidence prior to trial (Decision/Entry, State Court Record, ECF No. 5-49, PageID 1251, 1254-55). The Twelfth District affirmed this result. *Thornton,* 2013-Ohio-2394. In the alternative, it held Thornton had failed to demonstrate ineffective assistance of trial counsel in failing to obtain and introduce his new evidence because that evidence did not show no reasonable factfinder would have found him guilty. *Id.* at ¶41. This alternative holding is plainly on the merits of Thornton's Claim One and is entitled to deference

11

under 28 U.S.C. § 2254(d)(1) unless it is an objectively unreasonable application of the relevant Supreme Court precedent, *Strickland v. Washington,* 466 U.S. 668 (1984), and its progeny.

The governing standard for ineffective assistance of trial counsel was adopted by the Supreme Court in *Strickland*:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance,* 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel=s challenged conduct, and to evaluate the conduct from counsel=s perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

12

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987); *see generally* Annotation, 26 ALR Fed 218.

Regarding the deficient performance prong of *Strickland*, counsel's performance is measured by "prevailing professional norms" at the time of the alleged errors. *Strickland,* 466 U.S. at 690; *Maryland v. Kulbicki*, 577 U.S. ___, 136 S.Ct. 2, 4 (2015) (per curiam); *Rickman v. Bell*, 131 F.3d 1150, 1154 (6th Cir. 1997). *Kulbicki* rejects retrospective perfectionism regarding lawyer's conduct and notes the difference between finding forensic material in 1995 and 2015.

Thornton's own admissions undercut his argument that it was ineffective assistance of trial counsel to fail to obtain the photogrammetric expert opinion in 2007-2008.

> The factual predicate upon which Mr. Thornton's claims rely consists of scientific testing—testing that was, in fact, not widely known even among the defense bar or to prosecutors in the State of Ohio at the time of Mr. Thornton's conviction. Indeed, a Westlaw search for "photogrammetry" or "photogrammetric" yields only three cases, apart from the Twelfth District's decision affirming the denial of postconviction relief to Mr. Thornton.

(Traverse, ECF No. 56, PageID 2264.) If forensic photogrammetric evidence was largely unknown at the bar in 2007-2008, it can hardly have been deficient performance for Mr. Hunt to fail to seek funds to employ it.

DNA testing was more widely known at the time of trial, although perhaps not the Y-STR testing done here. But Thornton's ineffective assistance of trial counsel claim based on failure to obtain the DNA evidence fails on the second prong. For the reasons discussed above on the Schlup

gateway actual innocence claim, it is unlikely that the DNA evidence, which does not exclude Thornton, would have had an impact on the outcome.[4]

Because it is neither contrary to nor and objectively unreasonable application of Strickland, the Twelfth District's decision on the merits of Thornton's ineffective assistance of trial counsel claim is entitled to deference under 28 U.S.C. § 2254(d)(1).

Since Thornton's First Claim for Relief is both time-barred and without merit, the Court need not consider Respondent's alternative procedural default defense.

**Ground Two: Actual Innocence as a Stand-Alone Claim**

In his Second Claim for Relief, Thornton asserts that because he is actually innocent, it is unconstitutional to continue to imprison him under both the Cruel and Unusual Punishment Clause of the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment to the United States Constitution (Second/Successive Petition, ECF No. 47, PageID 2060).

Respondent asserts this claim is not cognizable in habeas corpus and Thornton admits in his Traverse that "the Supreme Court has declined, thus far, to recognize such a claim." (ECF No. 56, PageID 2270). He cites, however, "a growing body of social scientific literature [that] shows the deleterious effects of wrongful convictions," and concludes "the time has come to recognize that the continued incarceration of the actually innocent is intolerable under the constitution." *Id.*

Under the AEDPA as codified at 28 U.S.C. § 2254(d)(1), that is an argument that must first gain acceptance by the Supreme Court before it can become the basis of granting the writ. Or

---

[4] Mr. Hunt disclaims any strategic reason for not seeking DNA testing (Hunt Aff., ECF No. 56-1, PageID 2272, ¶ 5), but a reasonable attorney in his place, knowing how much evidence there was against Thornton, might not have wanted to take the risk that the DNA evidence would also be bad.

perhaps the Congress could be persuaded to return to the district courts the power to consider constitutional questions *de novo*. Until one of those events happens, this Court is without authority to grant relief on the basis of a stand-alone actual innocence claim.

**Motion for Evidentiary Hearing**

Because the state courts decided both claims on the merits, this Court is limited to considering the record upon which they made their decision. An evidentiary hearing is barred in this case. *Cullen, supra*. The Motion for Evidentiary hearing is accordingly DENIED.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

May 23, 2019.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).