# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

KEVIN MICHAEL THORNTON,

                Petitioner,      :      Case No. 1:14-cv-561

      - vs -                               District Judge Michael R. Barrett
                                        Magistrate Judge Michael R. Merz

TIM BUCHANAN, Warden,
  Noble Correctional Institution

                                    :

                Respondent.

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS

        This habeas corpus case under 28 U.S.C. § 2254 is before the Court on Petitioner's Objections (ECF No. 73) to the Magistrate Judge's Report and Recommendations (the "Report," ECF No. 68). District Judge Barrett has recommitted the case for reconsideration in light of the Objections (ECF No. 75).

        Petitioner makes six objections to the Report, which will be considered *seriatim*.

        Thornton's counsel begins his Objections with a six-page statement of purported facts (ECF No. 74, PageID 2349-2354). While these purported facts are, for the most part, supported by citations to the trial transcript, they are selective and argumentative. Moreover, they ignore the function of objections to a Report and Recommendations generally, and in a habeas corpus case specifically: they do not point to some place in the Report where the Magistrate Judge made an arguably erroneous fact finding or to some place where a state court did so. Instead, they constitute a factual narrative in support of Thornton's claim that he is not guilty. While such a general narrative would be appropriate in a direct appeal brief or in a motion to reopen a direct appeal

1

under Ohio App.R. 26(B), it does not serve to focus the District Judge on any errors the Report may contain.

The factual findings of the Twelfth District Court of Appeals, which appear at paragraphs two through six of its decision, *State v. Thornton*, 12th Dist. Clermont No. CA2008-10-092, 2009-Ohio-3685 (Jul. 27, 2009), are presumptively correct; the petitioner may rebut the presumption of correctness only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), citing 28 U.S.C. § 2254(e)(1). This narrative section of the Objections does not purport to show that those findings have been rebutted. It merely states a narrative featuring testimony favorable to Thornton.

**Objection One: The Report Errs in Finding the Petition Barred by the Statute of Limitations**

The Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214) (the "AEDPA") enacted a one-year statute of limitations for habeas corpus petitions with the time running from the latest of four dates. In his Objections (ECF No. 74, PageID 2354-55), Thornton claims the benefit of 28 U.S.C. § 2244(d)(1), which starts the running of the statute on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."

In his Traverse, Thornton claimed the relevant date was March 27, 2012, the date on which the DNA Diagnostics Center reported that the male DNA on the ties used to restrain the victim belonged to someone other than Thornton (ECF No. 56, PageID 2264). The Report concluded that Thornton had not shown due diligence in discovering that evidence because he had waited more than two years after his resentencing in 2009 to contact the Ohio Innocence Project, which arranged

for the testing.

The Objections incorrectly state that the Report found "Thornton failed to exercise due diligence to discover the exonerative evidence at the time of trial." (ECF No. 74, PageID 2355, citing Report, ECF No. 68, PageID 2313). The Report focuses on Thornton's lack of diligence between his resentencing in 2009 and his contact with the Ohio Innocence Project two years later in 2011 (ECF No. 68, PageID 2314). Quoting from *Gideon v. Wainwright,* 372 U.S. 335 (1963), and *Powell v. Alabama*, 287 U.S. 45 (1932), Thornton blames his lack of diligence on his attorney. He pleads that he received ineffective assistance of trial counsel when his trial attorney did not obtain the testing that the Innocence Project eventually obtained (Objections, ECF No. 74, PageID 2355-56), but his trial attorney's responsibility for the case ended when he was sentenced in September 2008 and new counsel was appointed for appeal. Once his direct appeal was over, Thornton was no longer entitled to appointed counsel, and he cannot blame his lack of diligence from 2009 to 2011 on someone who did not have a duty to exercise diligence on his behalf.

In his Objections, Thornton does not offer any facts to show what he himself did during this period. His present counsel notes that the Ohio Innocence Project is limited by its mission to accepting representation only after all appeals are completed. But there is no exception in the AEDPA to toll the time while an innocence project completes its screening. Thornton concedes his "conviction became final in July 2010" (Objections, ECF No. 74, PageID 2356). The Ohio Innocence Project admits it completed its screening in 2011. *Id*., quoting State Court Record, ECF No. 5-48, PageID 1224. However, the Petition was not filed here until July 8, 2014. If the Innocence Project had accepted the case in 2011, why did it wait three years to file?

Thornton has not shown he acted with due diligence in pursuing his claims. His first objection is not well taken.

3

**Objection Two: Thornton Has Established His Actual Innocence**

In his Petition, Thornton claimed he was actually innocent, both to excuse his delay in filing and in support of a stand-alone actual innocence claim for relief. In his Second Objection, he asserts he has sufficiently shown his actual innocence to satisfy the equitable gateway through the time bar recognized in *McQuiggin v. Perkins*, 569 U.S. 383 (2013).[1] (Objections, ECF No. 74, PageID 2356-57, citing *Schlup v. Delo*, 513 U.S. 298, 327, 329, 330 (1995)).

The Objections argue that the United States Court of Appeals for the Sixth Circuit has "already opined favorably on Mr. Thornton's actual innocence gateway claim" (ECF No. 74, PageID 2357, citing *In re Thornton*, Case No. 17-3282 (6th Cir. Nov. 17, 2017) (unreported; copy at ECF No. 43). The majority of the panel concluded:

> Thornton has made a prima facie showing that, if taken in light of the evidence as a whole, this newly discovered evidence would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found him guilty of the underlying offense. "'Prima facie' in this context means simply sufficient allegations of fact together with some documentation that would 'warrant a fuller exploration in the district court.'" *Lott*, 366 F.3d at 433 (quoting *Bennett v. United States*, 119 F.3d 468, 469 (7th Cir. 1997)). The fact that DNA results from the zip ties would not have named Thornton as a source raises doubts as to his guilt. And, as noted by the trial court, "[t]he findings of the photogrammetry expert might have gone a long way toward confirming the argument . . . that [Thornton] is too tall to be the perpetrator seen on the surveillance video."

*Id.* at PageID 1941 (trial court citation omitted).

Judge McKeague dissented from this conclusion:

---

[1] Counsel cited *McQuiggin* as it appears in the Supreme Court Reporter. Counsel's attention is directed to S. D. Ohio Civ. R. 7.2(b)(3) which directs that "[c]itation to United States Supreme Court decisions should be to the official U.S. Reports, if published."

4

> Finally, with respect to § 2244(b)(2)(B)(ii), I am not convinced that this evidence, assuming it is newly discovered within the meaning of the statute, would "suffic[e] to establish by clear and convincing evidence that . . . no reasonable factfinder would have found [Thornton] guilty of the underlying offense." 28 U.S.C. § 2244(b)(2), (b)(3)(C). The fact that Thornton's DNA was not found on the zip ties does not necessitate his acquittal. A reasonable factfinder might conclude, for example, that the DNA came from another person who touched the ties. Further, the fact that a single expert's photogrammetric analysis suggests the true suspect was three inches shorter fares no better. A reasonable factfinder might reasonably reject his opinion if faced with competing eyewitness testimony.

*Id.* at PageID 1944.

The majority opinion in the case held that Thornton's allegations of fact warranted further exploration in the District Court. So far as it is possible to tell from the Sixth Circuit's docket in the matter, it did not have before it the state court record. The Sixth Circuit did not hold Thornton had made a showing of actual innocence sufficient to satisfy the *Schlup-McGuiggin* gateway. Instead it held that issue warranted further exploration in this Court. It has now received that exploration. In addition to the reservations voice by Judge McKeague in dissent, the Report notes further evidence, considering the record as a whole which we must do in this situation, showing that a rational juror could have found Thornton guilty: his identification in the surveillance video by a Milford police officer who was familiar with him, his confession to a friend, his knowledge that police were investigating a Cash Express robbery before they mentioned the fact, and the fact that the perpetrator in the surveillance video is shown wearing gloves, explaining the absence of Thornton's DNA on the restraint ties (ECF No. 68, PageID 2315-16).

Thornton's Objections argue extensively with this analysis (ECF No. 74, PageID 2357-61). But the issue on the *Schlup-McQuiggin* gateway is not the weight of the evidence, but whether, in light of the new evidence, no rational juror could vote to convict.

5

**Objection Three: The Report Errs in Denying an Evidentiary Hearing**

As part of the Report, the Magistrate Judge denied Thornton's Motion for an Evidentiary Hearing (ECF No. 68, PageID 2321).[2] He objects that he is entitled to such a hearing because the state courts did not decide his ineffective assistance of trial counsel claim on the merits (Objections, ECF No. 74, PageID 2361).

The Report concluded that the Twelfth District Court of Appeals, on appeal from denial of the new trial motion, decided both that (1) "Thornton had failed to show he was unavoidably prevented from discovering the DNA and photogrammetry evidence prior to trial" and, in the alternative, (2) "he had failed to demonstrate ineffective assistance of trial counsel on the merits." (ECF No. 68, PageID 2317, citing *State v. Thornton*, 12th Dist. Clermont No. CA2012-09-063, 2013-Ohio-2394, ¶ 41 (Jun. 10, 2013); State Court Record, ECF No .5-49, PageID 1251, 1254-55).

Thornton objects that the Twelfth District's decision in the alternative is "muddled." This is, Thornton says, because it applied the wrong statute, Ohio Revised Code § 2953.23**(A)(1)(b)**, which, he claims, "is the statute governing relief following postconviction DNA testing." (Objections, ECF No. 74, PageID 2362, citing *Thornton*, 2013-Ohio-2394, at ¶ 38). Not so. The statute governing relief following postconviction DNA testing is Ohio Revised Code § 2953.23**(A)(2)**, reproduced in the margin.[3]

---

[2] The merits of a habeas case require an assigned Magistrate Judge to make a recommendation on the merits. On the other hand, the question of whether to have an evidentiary hearing is a non-dispositive pretrial matter on which an assigned Magistrate Judge may rule, subject to appeal to the District Judge under Fed.R.Civ.P. 72(a).

[3] "(2) The petitioner was convicted of a felony, the petitioner is an offender for whom DNA testing was performed under sections 2953.71 to 2953.81 of the Revised Code or under former section 2953.82 of the Revised Code and analyzed in the context of and upon consideration of all available admissible evidence related to the inmate's case as

6

The Twelfth District was dealing with an appeal of both a denial of leave to file a motion for new trial and dismissal of a petition for postconviction relief ("PCR"). As to the PCR denial, it noted that in order to entertain such a petition after the time limit in Ohio Revised Code § 2953.21 expires, a trial court must find that a petitioner meets both conditions in § 2953.23(A)(1) or the single condition imposed by § 2953.23(A)(2). *Thornton*, 2013-Ohio-2394, at ¶ 35. Because Thornton failed to satisfy § 2953.23(A)(1)(a), the court found it was not required to discuss the merits under § 2953.23(A)(1)(b). *Id*. at ¶ 38. Prefacing its continued writing with the word "nevertheless," *id*. at ¶ 39, it then proceeded for seven paragraphs to discuss the merits of the DNA claim, which were also relevant to whether Thornton had satisfied § 2953.23(A)(2). *Id*. at ¶¶ 39-45. It concluded that Thornton had satisfied neither § 2953.23(A)(1) or (2). *Id*. at ¶ 46. The Twelfth District's reasoning is straightforward and in no way "muddled."

But even if this Court were to assume that the Twelfth District did not rule on the merits of Thornton's ineffective assistance of trial counsel claim, that failure to rule would not entitle him to an evidentiary hearing in this Court, because he has procedurally defaulted that claim by not timely presenting it to the Ohio courts. The Sixth Circuit Court of Appeals requires a four-part analysis of a possible procedural *Barton v. Warden, S. Ohio Corr. Facility,* 786 F.3d 450, 464 (6th Cir. 2015), *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); accord *Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

---

described in division (D) of section 2953.74 of the Revised Code, and the results of the DNA testing establish, by clear and convincing evidence, actual innocence of that felony offense or, if the person was sentenced to death, establish, by clear and convincing evidence, actual innocence of the aggravating circumstance or circumstances the person was found guilty of committing and that is or are the basis of that sentence of death."

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
>
> . . . .
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin*, 785 F.2d at 138 (6th Cir. 1986); accord *Hartman v. Bagley,* 492 F.3d 347, 357 (6th Cir. 2007), quoting *Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002). Here the State of Ohio has an applicable procedural rule governing when petitions for postconviction relief may be filed. That rule is adequate in that it enforces the state's interest in the finality of criminal convictions. The Rule was plainly enforced against Thornton by the Common Plea Court and by the Twelfth District.

A habeas petitioner cannot overcome the bar of *Cullen v. Pinholster*, 563 U.S. 170 (2011), by failing to obtain a merits hearing in the state court because of a procedural default. That would obviate the entire procedural default doctrine and return us to *Fay v. Noia*, 372 U.S. 391 (1963). Whether or not that result is desirable in the abstract, it is precluded by precedent.

**Objection Four:  The Report Errs on the Merits**

In his Fourth Objection, Thornton argues the Magistrate Judge erred on the merits of the ineffective assistance of trial counsel claim (ECF No. 74, PageID 2362-63).  This portion of the Objections does not require further analysis beyond that made in the Report.

**Objection Five:  The Report Errs in Rejecting Thornton's Stand-Alone Actual Innocence Claim**

Petitioner's Second Ground for Relief is a stand-alone actual innocence.  That is to say, Thornton's evidence that he is actually innocent is, in this portion of the Petition, offered to ground a claim that his actual innocence by itself makes his incarceration unconstitutional.  The Objections concede that the Supreme Court has "not yet recognized a free-standing actual innocence claim," but argues developments since *Herrera v. Collins*, 506 U.S. 390 (1993), "indicate the need to revisit the issue." (ECF No. 74, PageID 2364 (ciations omitted)).  If so, that revisitation must occur in the United States Supreme Court.

**Objection Six:  The Report Errs in Denying a Certificate of Appealability**

A habeas corpus petitioner requires a certificate of appealability in order to proceed on an appeal from a dismissal of his or her petition in district court.  Congress provided in the AEDPA

> (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
>
> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court;

9

28 U.S.C. § 2253. Although a reading of the plain text makes issuance of a certificate to be the responsibility of an appellate judge, the courts of appeals, within months of the effective date of AEDPA, "delegated" the initial appealability question to the district courts. *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997), overruled in part on other grounds by *Lindh v. Murphy*, 521 U.S. 320 (1997); accord *Kincade v. Sparkman*, 117 F.3d 949, 953 (6th Cir. 1997) (adopting analysis in *Lozada v. United States*, 107 F.3d 1011, 1017 (2nd Cir. 1997)). That delegation has now been codified by the Supreme Court in Rule 11 of the Rules Governing § 2254 Cases. Certificates are issued on an issue-by-issue basis. *Id.* Issuance of blanket grants or denials of certificates of appealability is error, particularly if done before the petitioner requests a certificate. *Porterfield v. Bell,* 258 F.3d 484, 486-87 (6th Cir. 2001); *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001) (per curiam).

The standard for granting a certificate on an issue is whether jurists of reason would disagree with the District Court's decision on a particular issue. In this case, Thornton claims "reasonable jurists could disagree about the courts' failures, thus far, to exonerate Mr. Thornton." (Objections, ECF No. 74, PageID 2365.) By "exonerate" Thornton presumably means "to clear of all blame, to officially declare a person to be free of guilt." See *Exonerate*, BLACK'S LAW DICTIONARY (10th ed. 2014), at 696. But at least until the United States Supreme Court recognizes a free-standing actual innocence basis for habeas corpus relief, exoneration of habeas petitioners is beyond the authority of habeas corpus courts. And no reasonable jurist would dispute a decision by this Court that the Supreme Court has not done that.

**Conclusion**

Having reconsidered the case in light of the Objections, the Magistrate Judge again recommends that the Petition be dismissed with prejudice and Petitioner be denied a certificate of appealability on the issue on which he has sought a certificate.

July 5, 2019.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).